UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Loretta Hillware,

        Plaintiff,

v.

National Football League, and Roger Goodell, in His official capacity as Commissioner, and Employer of the New Orleans Saints, Jay Bauman, in His official capacity as National Football League Counsel, and Employer of the New Orleans Saints, Tom Benson, in His official capacity as the New Orleans Saints Football Club Owner, Vicky Neumeyer, in Her official capacity as New Orleans Saints General Counsel, Michael Stanfield, in His official capacity as New Orleans Saints Vice President, and Derek Henderson, in His official capacity as New Orleans Saints Corporate Executive of National Football League and New Orleans Saints,

        Defendants.

Civil Action No.

## COMPLAINT

    This Complaint is based upon the fact that Plaintiff had been an employee for nearly 5 years, and had excelled in the position, and later after recuperation from a family Domestic Violence encounter, suffered from the Defendants' Emotional Abuse including non-physical behaviors like insults, humiliation, intimidation, isolation. Further, Domestic Violence is the 3rd cause of homelessness in the United States of America. Due to the fact that likewise, Plaintiff's daughter had to leave the homeless shelter, and is never able to return for a visit, not even during Thanksgiving and/or Christmas (or any other holiday) to visit or see her mother and siblings, for the shear fact that Plaintiff resides in a Homeless Shelter in an undisclosed location, and Plaintiff's oldest child is 21 years of age. Additionally, Plaintiff is still being abused by former Employer, the National Football League, as well as the New Orleans Saints. Plaintiff's oldest child has been equally abused, and has been forced to become estranged from Plaintiff. Thus, the eldest child has, likewise, had her hopes and dreams destroyed due to the fact that Plaintiff did not possess the financial means necessary to provide adequate resources for the eldest of her three children to go to college so that she could gain future opportunities in the medical profession. Further, Plaintiff has suffered additional Psychological Abuse, also referred to as emotional abuse or mental abuse, a form of abuse characterized by a person [or persons] subjecting or exposing another to behavior that could result in chronic depression. Plaintiff attempted regular monitoring or "checking in," in an effort to gain her stability with her employer. However, Plaintiff's colleagues that were, and still are, employees of the New Orleans Saints, and the National Football League, never stopped putting Plaintiff down,

embarrassing Plaintiff publicly, intentionally preventing Plaintiff from seeing or talking with friends and fans, intimidating and humiliating Plaintiff. As a matter of fact, these National Football League employees blamed Plaintiff for the Domestic Violence actions that caused her abusive and unhealthy relationship which caused her to ask for a hiatus from her career of enjoyment. However, Plaintiff ultimately dismantled her abusive relationship, and then tried, with all her might, to go back to the career that she so much enjoyed and loved, and found to be quite rewarding and fulfilling with her Employer. Moreover, Plaintiff's Employer treated her like she had a handicap. The New Orleans Saints mocked Plaintiff repeatedly, as if she were a leaper. However, what the Plaintiff found to be unbelievable was, in fact, that she had been discriminated against, and ostracized based upon the fact that she had been abused, although she was trying to get back to the normal routine of business in the National Football League of Sunday games and selling tickets. The New Orleans Saints found Plaintiff to disabled. Plaintiff is a former Domestic Violence victim, but not only capable, also ready, willing and able to perform the duties and the responsibilities of the position. <u>Kane v. Suffolk Co. Sheriff's Dept.</u>, 20 MDLR 135, 146 (1998) (being singled out based on handicap).

Plaintiff is of a reasonable sound mind and body, and had she thought her life, or her three children's lives would have been jeopardized by re-entering the job she enjoyed and was with full experience, then she would not have contacted Defendants to gain control of her the career she so loved and enjoyed. Plaintiff's Emotionally abusive traits are characterized by Defendants' numerous put-downs, including Dennis Lauscha's repeated put-downs via his personal assistant through voicemail, despite Plaintiff's numerous postal messages and overnight letters, these and other factors have caused fear, intimidation, as well as the making of suggestions of threatening harm to herself, children, friends, destruction of family, forcing isolation from career and fans, children's school and her work and career that she so passionately loved. Emotional abuse continued by Defendants when they consistently insulted Plaintiff with put-downs over the phone. Plaintiff was made to feel guilty and immature when Defendants insisted that she could not come back to the enjoyment of her career after the hiatus. All of this behavior yet established another unhealthy, abusive relationship with the New Orleans Saints, and likewise, continued to cause Plaintiff's emotional pain, suffering, and scarring, in lieu of her healing. Plaintiff actually started to believe that she was worthless. Self-worth and emotional well-being was altered and even diminished by the verbal abuse of Defendants and further resulted in an emotionally abused Plaintiff. Defendants' psychological effects, or tactics of brainwashing, continued to psychologically abuse Plaintiff. Defendants' emotional abuse consisted of manipulation of the Plaintiff's emotions. The Plaintiff felt her emotions were affected by the Defendants so much that they controlled her, as a result, Plaintiff's self-concept and independence were both systematically taken away.

Vicky Neumeyer ("Neumeyer"), Michael Stanfield ("Stanfield"), Derek Henderson ("Henderson"), consistently criticized Plaintiff for still hoping to experience the enjoyment of career, enjoyment of life, and hopefulness, which resulted in Plaintiff's loss of confidence, poor self-esteem and worthlessness, never trying to help. Defendants controlled and manipulated Plaintiff into staying away from her career, and living in extreme conditions, relative to extreme poverty, homelessness, and humiliation for an extended period of time. Plaintiff was, and

continues to be treated like a leaper. Counsel Neumeyer, of all people, turned against Plaintiff for no apparent reason, other than the fact that she wanted to blend in with colleagues that did not need a hiatus, and destroy Plaintiff's career and self-esteem.

Further, Plaintiff's children were diminished and suffered right along beside her for 9 long years. As a matter of fact, Plaintiff's son was attacked, by no-fault of his own, by an angry mob of black youth. This angry gang caused continued violence resulting in Plaintiff's son fearing for his life, and refusing to go out of doors, causing Plaintiff's son even further harm by experiencing feelings of bullying. While this incident occurred on the way to Plaintiff's homeless shelter, she and her son were standing at a city bus stop, in an effort to get to their destination. As a matter of fact, all three of Plaintiff's children, did reside in these extremely harsh and dangerous surroundings. Plaintiff still remains in the ghetto, to this day.

Plaintiff, near nervous breakdown state of being, suffers, and has been suffering for the past 9 years from (1) loss of career, (2) loss of enjoyment of life, (3) fear in physical and general, (4) feeling degraded, (5) feelings of helplessness, (6) frustration, (7) hopelessness, (8) inconvenience and (9) humiliation because, Neumeyer, Stanfield, Henderson, did not serve justice. Further, if justice could have been served, then the promise made to come back her career once the dust settled, would have been delivered. Even though Plaintiff tried to regain her dignity and respect in society, she was never given that opportunity based upon the fact that the New Orleans Saints did not deliver on their promise which was to have her return a year later.

However, given the fact that Plaintiff was in a domestic dispute, and fled to another jurisdiction, along with her three children, the New Orleans Saints continued to deny her of re-employment, in general. *Erewa v. Reis, 20 MDLR 36, 38 (1998)(caused Complainant to leave a field of work she loved and enjoyed).* Eng v. American Pie, Inc., 20 MDLR 53, 58 (1998). However, once Plaintiff dealt with the legalities of custody, she then contacted the New Orleans Saints, as they recommended, however, at that time, and on the numerous occurrences, hence, up to the point of stress and headaches, Plaintiff was told "No, she should not come back." Eng v. American Pie, Inc., 20 MDLR 53, 58 (1998). For 9 long years, Plaintiff has been, and is therefore, currently being treated unfairly, and unjustly, and is suffering from the let down and sharp blow of further harsh and undue treatment by the New Orleans Saints, even though she did nothing wrong. Plaintiff sees this act as an oxymoron of sorts, where she is the victim, and thus is being singled out and made feel like she has a handicap, Suffolk Co. Sheriff's Dept., 20 MDLR 135, 146 (1998) (being singled out based on handicap).

Plaintiff continues to be robbed of her livelihood. While the leave of absence from the New Orleans Saints took place in the Superdome Saints Tickets Office Supervisor position, Plaintiff suggested her taking alternate sales, or other types of roles to gain her enjoyment of career again. Now, Neumeyer, Stanfield, Henderson suggested that Plaintiff should never worry about coming back to the enjoyment of her career; they were all extremely non-responsive

3

to Plaintiff's troubled existence. Defendants continued to abuse Plaintiff by never delivering on their promise. In fact, Plaintiff was given numerous verbal apologies, after repeated attempts of trying to gain her independence back by enjoying her career and her clients. On numerous occasions, Plaintiff attempted to get back to the business of selling all the commodities of a National Football League Sports Team, like she so joyfully loved, but the New Orleans Saints Employees never agreed to the return of Plaintiff, nor her children. Each separate attempt that Plaintiff made to re-live with enjoyment of career, with enjoyment of life, without fear, without degradation, without feelings of helplessness, without frustration, without hopelessness, without inconvenience, and without humiliation, with dignity of career, were quickly dismissed, despite her earlier being told to come back when she ever she could. Plaintiff was assured that she would be welcomed back to a career that supported her family financially, as well as provided a life of painlessness, freedom from turmoil, and hopefulness and lack of poverty.

    Defendants, , Neumeyer, Stanfield, Henderson, all conspired against Plaintiff. In fact, none of the four above-mentioned ever once said come back to a life of career enjoyment, over the past 9 long years. Plaintiff has been emotionally abused and scared permanently by these colleagues. The New Orleans Saints, as well as National Football League employees, continuously denied Plaintiff of a life of enjoyment of career. Plaintiff's never received any serious consideration, just apologies. Despite Plaintiff's numerous attempts, she was refused in spite of promises made. Land v. Consolidated Freightways, Inc., 20 MDLR 91, 96 (1998) (hopeless about future). Defendants mocked sufferer's diligence and follow through regarding her loss of career, as well as her degradation, pain and suffering, and mental anguish and deep depression, to the extent that they prevented her from regaining the familiar success, and getting back on her feet again as she had been so rightfully promised. Eng v. American Pie, Inc., 20 MDLR 53, 58 (1998) (humiliated by jokes concerning Complainant's lawsuit); Carter v. Commissioner of Corrections, 43 Mass. App. 212 (1997) (embarrassment); Draghetti v. Chmielewski, 416 Mass. 808 (1994) (ridicule by coworkers). Durante v. Eastern Properties, Inc., 18 MDLR 1, 5 (1996) (forced to move into a homeless shelter when unable to pay rent); Hurd v. Mass. Port Authority, 20 MDLR 11, 19 (1998) (insecurity about future and career); Lungelow v. Boston Penal Institution, 14 MDLR 1350, 1362 (1992) (destitute); Tosti v. Ayik, 400 Mass. 224 (1987) (discharge caused plaintiff to sell two homes, uproot his family, sell furniture, and borrow from relatives); Quint v. A.E. Stanley Mfg. Co., 172 F.3d 1, 14 n. 10 (1st Cir. 1999) (worries over loss of health insurance). She has not only struggled herself, but likewise her three children have been equally suffering, emotionally. Guth v. Fradellos, 18 MDLR 229, 231 (1996) (nightmares); Land v. Consolidated Freightways, Inc., 20 MDLR 91, 96 (1998) (suicidal dreams). The children were robbed of their mother's occupation, as well as her income, and currently remain in a state of loss of enjoyment of life, feelings of helplessness, feelings of hopelessness, and frustration. Samuelson v. Sungard Financial Systems, Inc., 20 MDLR 197, 204 (1998); Tosti v. Ayik, 400 Mass. 224 (1987) ($275,000 in defamation claim) (deterioration of social life). Plaintiff's three children's hopes and dreams were never unfolded.

4

The homeless shelter forbade the children of ever having sleepovers, and the children were far too embarrassed of the shelter's appearance to have visitors, as visitors were treated like those who would have visited a prison by signing in and out, and leaving only after a few hours. Hurd v. Mass. Port Authority, 20 MDLR 11, 19 (1998); Kenney v. R&R Corp., 20 MDLR 29, 32 (1998) (self-doubt); Fijal v. Kentucky Fried Chicken Food Service, Inc., 20 MDLR 45, 48 (1998) (doubts of self-worth).

Nevertheless, the surroundings were sub-standard, and not up to the standards of living conditions for Plaintiff to feel as though she would not feel depressed and ashamed. Beldo v. University of Massachusetts, Boston, 20 MDLR 105, 113 (1998) (felt anxiety).

Moreover, this homeless shelter's living environment caused continued strain and stomach problems for Sufferer. Land v. Consolidated Freightways, Inc., 20 MDLR 91, 96 (1998), (preexisting emotional problem). One of Plaintiff's children, suffered from the inability to concentrate due to unfamiliar surroundings, and the quality of life that was not constant due to the fact that Plaintiff had promised to return to the job that the family all had grown to know and love. Samuelson v. Sungard Financial Systems, Inc., 20 MDLR 197, 204 (1998). The homeless shelter is prison-like in nature and scope. Plaintiff and her children sign in and out by writing their names in a homeless log day-in and day-out. Durante v. Eastern Properties, Inc., 18 MDLR 1, 5 (1996) (feeling dirty and degraded, like a piece of property).

Plaintiff seeks an award in the amount of $4.5 million or $4,500,000.00 for mental suffering associated the fright and terror of never being able to regain economic stability, terror of being homeless, apprehension of living in the ghetto, nervousness, anxiety, worry, humiliation, mortification, feelings of lost dignity, embarrassment, grief, and shock, loss of career, loss of enjoyment of life, feelings of degradation, and further seeks consideration in the amount of $1,500,000.00 for the eldest child, that cannot come home on any occasion including Thanksgiving or Christmas-continuing, Plaintiff requests $1,500,000.00 for the middle child and $1,500,000.00 for the youngest child, that is currently suffering. Plaintiff's, as well as Plaintiff's children's scarring is from (1) loss of career, (2) loss of enjoyment of life, (3) fear in physical and general, (4) feeling degraded, (5) feelings of helplessness, (6) frustration, (7) hopelessness, (8) inconvenience and (9) humiliation. Additionally, Plaintiff and Plaintiff's children request the consideration to be granted in the form of a trust fund. Plaintiff seeks relief due to the fact that her three children were shocked and paralyzed from the living environment, and abusive nature of the homeless shelter. The sufferer, and sufferer's children struggle on public transportation, i.e. walking to her destination, riding on Metro buses, due to the fact that Plainitff does not possess a car. Plaintiff purchases clothing from thrift stores, off the sale rack.

Respectfully submitted,
Loretta Hillware, Pro Se
Loretta Hillware
5 Thomas Circle, NW; 2nd Floor
Washington, DC 20005
HillwareLoretta@yahoo.com
(202) 423-4470

Roger Goodell, Commissioner
National Football League
345 Park Avenue
New York, NY 10154
(212)450-2000

Tom Benson, Owner
New Orleans Saints
5800 Airline Drive
Metairie, LA 70003
(504) 733-0255

Dennis Lauscha, President
New Orleans Saints
5800 Airline Drive
Metairie, LA 70003
(504) 733-0255

Jay Bauman, Esquire
Vice President
National Football League
345 Park Avenue
New York, NY 10154
(212)450-2000

Vicky Neumeyer, General Counsel
New Orleans Saints
5800 Airline Drive
Metairie, LA 70003
(504) 733-0255

6